SMITH and others, trustees &c. v. POST and others.

---

J. P., by will, devised the residue of rents and profits of real and personal estate to his children O. B., J. I. P., D. D., W. P. and P. R. P. to be equally divided between them and their legal heirs; and in case any of his said children died without issue, his or her share should revert to the remaining children; but in case of one dying and leaving issue, then the part which such child would have been entitled to should make a share for his or her child. There was a power to his executors to sell all the real estate, add all the personalty to it and divide the same into five parts, and dispose of one fifth to the said C. B. or her legal heirs, one fifth to the said J. I. P. or his legal heirs, one fifth to the said P. R. P. or his legal heirs, one fifth part at interest, such interest to be paid to the said D. D. and in the event of her death before her husband, to appropriate the interest to the benefit of her children as they came of age; and if she survived him, then she was to be put into the full possession of the one fifth. And the remaining one fifth was to be placed at interest for W. P. (another child;) and in case of his death leaving no issue, then this fifth was to be divided between the testator's surviving children and his legal heirs, but should he reform in his habits, then he was to have the entire possession of this fifth part. The will directed the executors to sell a house in Broad Street and out of the proceeds to pay a legacy; and the residue of the purchase money was to be divided into six equal parts, and one was to be given to his wife and the remaining five sixths were to be distributed among his children and their legal heirs in the same manner as had been before directed with regard to the real and personal estate after the death of his wife. The widow survived all the children, except W. P., and then died. W. P. was living, but had never any children. C. R., D. D., J. I. P. and P. R. P. were all dead leaving children. Prior to the deaths of P. R. P. and J. I. P., they had respectively assigned their rights in the testator's estate by way of mortgage, without their widows having joined: Held, that the children took an estate for life in the property, and that the remainder in fee went to the children of the devisees, i. e. all the children of the devisees, and not merely those born at the time of making the will or at the death of the testator. That the lands passed by a devise of the rents and profits; and were vested in the devisees, subject to the power of sale in the trustees; and when this was executed, the proceeds belonged to the devisees for life in remainder in like manner as the land. That the proceeds of the Broadway House, after setting apart a sixth for the widow, stood upon the same footing. That as J. I. P. and P. R. P. had only a life estate, their widows had no dower; and the mortgages only operated upon their shares of the rents and profits. That W. P.'s share was to be put out during his life and afterwards divided among-t his brothers and sisters children *per stirpes.* Shares of infants to be paid to general guardians, and where there were no general guardians, to be paid into court. The shares of femes covert (if of age) to be paid over on joint receipts of themselves and husbands.

---

Bill for directions in relation to the distribution of the estate of John Post, deceased.

The testator, by his will, dated the fourth day of July one thousand eight hundred and seventeen, among other provisions for his wife in lieu of dower, bequeathed to her one

thousand dollars to be paid annually out of the rents, issues and profits of his real estate and also one half of the ready money in his house at the time of his death. He gave the residue of the rents, issues and profits of his real and personal estate to his five children, namely, Catharine Butler, John I. Post, Deborah Douglass, William Post and Peter R. Post, to be equally divided between them or their legal heirs according to the terms thereinafter named. And in case any one of his children should die without lawful issue, then his or her part or share should revert to and be equally divided amongst his remaining children; but in case any or either of them should die leaving lawful issue, then the part or parts which such of his said child or children would have been entitled to should make a share or shares, part or parts for his, her or their children. Then followed a power to his executors, after the decease of his wife Deborah, to sell all his real estate and to add all his personalty to it and to divide the same into five equal parts : and to dispose of them in the following manner, to wit, one fifth part they should give to Catharine Butler or her legal heirs, one fifth part to John I. Post or his legal heirs, one fifth part to Peter R. Post or his legal heirs, one fifth part at interest, on good and sufficient security, the interest of which they should pay annually to Deborah Douglass ; and in the event of her death before her husband, to appropriate the interest to the benefit of her children, giving to each, as they came of age, the principal of their own equal part or portion. But should she survive her husband, then the whole of her one fifth, put out, should immediately or as soon as convenient be put into her full and entire possession. The remaining one fifth part to be put at interest for the benefit of William Post, the interest to be paid to him annually ; and in case of his death without lawful issue, then this one fifth should be equally divided between the testator's surviving children or their legal heirs—but should he reform in his habits so as to be deemed fit to be entrusted with its management, the executors were then to give him full and entire possession of his said one fifth part. The will then directed the executors to sell a house and lot in Broad Street and out of the proceeds to pay a legacy of two hundred and fifty dol-

lars ; and the residue was to be divided into six equal parts, one of which his executors were to give to his wife and the remaining five sixth parts they were to distribute and dispose of among his children or their legal heirs precisely in the same mode and manner as he had above directed them to dispose of the five equal parts of his estate both real and personal after the decease of his wife. The testator appointed four of his children, namely, Mrs. Butler, Mrs. Douglass, John I. Post and Peter R. Post executors of his will.

The widow survived all the children, except William Post, and died on the sixteenth day of July one thousand eight hundred and thirty-four. William was still living, but had no children—nor had he any at the time of the testator's death. Catharine Ritter then had five children, who were all alive ; but she died in the year one thousand eight hundred and twenty-eight. Deborah Douglass, at that time, had six children and died in the same year with Mrs. Ritter. Her six children were still living. At the time of the testator's death, John I. Post had eleven children ; he died in the year one thousand eight hundred and twenty, leaving a widow and twelve children ; three of whom had died intestate and without issue, another of them, a daughter, died leaving a husband and three infant children who were alive. These four deceased children of John I. Post had died previous to the death of the testator's widow. Peter R. Post, at the time the testator died, had one child, who departed this life in the year one thousand eight hundred and twenty-three, leaving a widow and three children ; and all of whom are living.

The present trustees had sold real estate since the death of the widow to the amount of fifty-two thousand six hundred and seventy-five dollars.

On the first day of May, one thousand eight hundred and twenty-nine, Peter R. Post was indebted to Catharine Ritter in the sum of two thousand three hundred dollars ; and, on that day, executed to her a bond and assignment by way of mortgage of all his right, title and interest in the estate coming under his father's will, for securing the repayment of the debt, with interest.

John I. Post, being indebted to his father on several bonds

1835.

SMITH
v.
POST.

and with a view of securing his estate from any loss on account thereof, did, on the twenty-fourth day of December one thousand eight hundred and twenty-nine, execute, to his co-executor, an assignment of all his interest in the estate under the will, so far as might be necessary to secure the indebtedness.

The assignments thus made respectively by Peter R. Post and John I. Post remained in force and the debts were unpaid at the time of their deaths.

It was necessary to ascertain what rights and interests they took in the estate under the will, in order to determine how far these mortgages were now operative upon the shares which were devised to them? and another question was, whether the widows of John I. Post and Peter R. Post, were entitled to dower, either legally or equitably, in such shares?—they not having united with their husbands in the assignments.

The trustees prayed for advice and direction: 1. as to whether the assignees or mortgagees of John I. Post and Peter R. Post were entitled, out of the estate under the assignments, to any thing more than to their respective shares of the rents and profits of the estate during the respective lives of the assignees? 2. Whether their widows were entitled to dower as claimed by them? 3. What disposition should be made of the share which was given and devised for the benefit of the testator's son, William Post? 4. What disposition should be made of the shares, upon the distribution, which belonged to infants? and, 5. Whether the petitioners should report their proceedings to this court in relation to the sales of the real estate or of what they might hereafter do under and by virtue of their appointment as trustees?

Mr. *J. P. Hall*, for the trustees.

Mr. *J. Dikeman*, for defendants.

THE VICE-CHANCELLOR:—Under the devise of the residue of the rents and profits, after the one thousand dollars annually is taken out of the same for the widow of the testator,

I am of opinion that the children of the testator, namely, Mrs. Ritter, Mrs. Douglass, John I. Post, Peter R. Post and William Post, take life estates in the lands as tenants in common, with benefit of survivorship or cross-remainders for life, in the event of one or more of them dying without lawful issue. The words " or their legal heirs according to the terms hereinafter named," are, in this will, words of purchase and carry the remainder in fee to the children of the devisees above named: *Crawford* v. *Trotter*, 4 Mad. C. R. 361 ; *Jeffery* v. *Honywood*, Ib. 398.

This is manifest from the two next clauses of the will, in which the testator gives the share of any one dying without lawful issue to the survivors and then " in case any or either of them " (the five children) " shall die leaving lawful issue, the part or parts which such, &c. would have been entitled to, shall make a share or shares, part or parts for his, her or their children." Here the word " *children* " is used as being the legal heirs referred to in the devising clause ; and they are to take substitutionally. The devise to them is of a distinct estate in their own right ; hence, the first must be deemed a life estate in the testator's five children respectively ; and the second, which is to their children, an estate in remainder upon the determination of the respective life estates in their parents. The persons entitled to this estate in remainder are all the children of the first takers respectively and not merely those who were born at the time of making the will or at the death of the testator: *Crone* v. *Odell*, 1 B. & B. 483 ; 3 Bro. C. C. 404, n. 2.

The title to the lands passed, in this case, by the devise of the rents and profits : see, *Paterson* v. *Ellis*, 11 Wend. 298, and cases there cited. It vested in the devisees and not in the executors.

The devisees, however, took the legal estate subject to the power of sale in the executors or trustees, which is a naked power in trust. When this power was executed, the proceeds belonged to the devisees for life in remainder, in like manner as the land ; and the directions for distribution appear to conform thereto and to carry out the intention of the testator in that respect.

The proceeds of the Broad Street house and lot, after

1835.

SMITH
v.
POST.

paying off the legacy of two hundred and fifty dollars and setting apart one sixth for the widow, stands upon the same footing as the proceeds of the other parts of the estate sold since the widow's death. The whole must be divided into five equal parts. One fifth part, with one fifth of the rents or interest and income since the death of Mrs. Ritter, now belongs to her children absolutely and is to be divided equally among them. One other fifth part, in like manner, belongs to and is to be divided between the five children of Mrs. Douglass. Another fifth part belongs, in like manner, to the children now living of John I. Post and to the children of the deceased daughter Sarah Vermule : these three children being entitled to their deceased mother's share subject to their father's right as tenant by the curtesy—for I consider that the proceeds of the real estate is still to be regarded as land in this distribution.

John I. Post had but a life estate under the will. His widow, Mrs. Agnes Post, has no right of dower in this share of the estate. Nor is the assignment made by way of mortgage of any effect beyond the rents, profits and income of the one third during the life of John I. Post. Another one fifth part belongs to the children of Peter R. Post deceased; and is to be divided between them. Their mother, Mrs. Ann Post, has no right of dower in it. And so with respect to the mortgage given by him to Mrs. Ritter, it only operated upon his share of the rents and income so long as he lived. The remaining one fifth, the trustees are to hold and invest for the benefit of William Post during his life. At his death without a child or children, it will belong to the children of his deceased brothers and sisters and must be divided among them in like manner as above, each set of children taking one fourth *per stirpes* or by representation.

With respect to the shares of those who are infants (in this general distribution or settlement) the trustees will be safe in paying the money to their general guardian ; and if they have no guardians, their shares may be paid into court where it can be invested until they come of age.

The shares belonging to femes covert may be paid over upon the joint receipts of themselves and husbands, provided they are of age.