HENRY R. DURFEE et al., as Executors of CHARLES G. POME-
ROY, Deceased, Respondents, v. FRANCES POMEROY, Appel-
lant, Impleaded with Others.

1. WILL — GIFT OF RENTS AND INCOME. A testamentary gift of the
rents and profits of land, or gift of the income arising from personal
property, vests such an estate in the devisee or legatee as conforms to the
evident intention of the testator.

2. SUSPENSION OF POWER OF ALIENATION. The fact that the execu-
tors, as such, may have to deal with the income of the vested interests in
order to carry out the provisions of the will does not create any illegal
suspension of the power of alienation.

3. WILL CONSTRUED. The will of a testator who left surviving a mar-
ried daughter and an unmarried son, created two distinct trusts, each con-
sisting of one-half of the residuary estate, real and personal, the rents
and income of one to be paid to the daughter for life, and the rents and
income of the other to be paid to the son until he attained the age of
forty-five, or until such later period at which the executors might deem
him fit to receive the principal. The will disclosed an intention that the
property should follow the testator's blood in the ultimate disposition
thereof, and in connection with provisions to that intent, declared that if
the son, "in the event of his death within the periods aforesaid, should
leave no child or children him surviving, but should leave a wife him
surviving, then she is to have and I devise and bequeath to her one-half
of the income of said half of the rest, residue and remainder of my said
property, so long as she shall remain his widow unmarried, the other one-
half of said income to be held by my said executors or their successors
and paid by them to and for the use of my daughter. In case the wife
of my said son should marry again, then the share of said income so
bequeathed to her is to go to my daughter if she then survives; if not,
to her children." The son died before attaining the age of forty-five,
childless, but leaving a widow. *Held*, that the provision for the son's
widow was not void as being under a trust which was thereby made to
involve an illegal suspension of the power of alienation; but, *held*, that
the legal effect of the son's death was to terminate the trust for his bene-
fit, and that the devise and bequest of one-half of the income of the
principal theretofore tied up in the trust, to his widow, vested in her a
legal estate in one-half of the principal, real and personal, to wit, a life
estate during her widowhood.

*Durfee* v. *Pomeroy*, 7 App. Div. 431, reversed.

(Argued December 3, 1897; decided January 11, 1898.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered June 22, 1896, affirming a judgment of Special Term construing the will of the late Dr. Charles G. Pomeroy, of Newark, N. Y.

The material portions of the will are as follows:

"*First.* I will and devise the house and lot on which I reside, being my homestead, in the village of Newark aforesaid, including any new house or buildings that I may, after the date of this my will, put upon said premises, to my son, Rhea B. Pomeroy, for and during his natural life; and after his death, if he leaves a wife and she has a child or children by him then surviving, then to his wife during her life, and after her death, to his child or children absolutely in fee; if he leaves no wife, but leaves child or children, then at and after his death to such his child or children absolutely in fee; if he leaves no child or children, then at and after his death, to my daughter, Eliza A. McIntyre, for and during her natural life, and at and after her death, to her children absolutely in fee."

Subdivision second disposes of certain personal property not material to this suit.

"*Third.* All the rest, residue and remainder of my real and personal property and estate, of every name, kind and nature, wheresoever situate (after deducting said homestead and the articles and property hereinbefore devised and bequeathed), I will, devise and bequeath to my executors hereinafter named, and their successors in trust, upon and unto the uses, purposes and trusts hereinfter named, that is to say:

"The equal one-half of said rest, residue and remainder of my said property and estate, I will, devise and bequeath to my said executors, and their successors, in trust to receive the rents, issues, income and profits (including one-half of the interest on moneys invested) thereof, and pay and apply the same to and for the use of my son, Rhea B. Pomeroy, until he shall arrive at the age of forty-five years, if he shall so long survive, or in case my said son Rhea should not live to reach the age of

forty-five years, then to apply the same to the use of my said son during his life.

" When my said son shall arrive at the age of forty-five years, if, in the judgment of my executors, or their successors, he is a sober man and fit to be entrusted with said property, then my said executors or their successors are to transfer and convey said one-half of said rest, residue and remainder of my said property and estate to my said son absolutely, to be his absolutely.

" If, when my said son arrives at the age of forty-five years, he is not, in the judgment of my executors or their successors, a sober man, and is not fit to be entrusted with said property, then my said executors or their successors are to retain the same in their hands and control until such time as my said son shall, in their judgment, be a sober man, and fit to be entrusted with said property, and then they are to transfer and convey the same to him, to be his absolutely.

" During the interval before my said son shall arrive at the age of forty-five years, or longer if they should retain possession and control, my executors or their successors are not to sell any of my real estate without my son Rhea's consent, nor shall they during such time repair or rebuild any of my real estate without his advice and consent, and they are to invest any principal or any income thereof in their hands not necessary for immediate use for the purposes of this will, in bond and mortgage on real estate, or in government or New York State securities.

" If my said son previous to the time of his arrival at the age of forty-five years, or previous to the further time above-mentioned when my said executors or their successors shall transfer and convey to him said half of said rest, residue and remainder of my said property as above provided, shall die, leaving a child or children him surviving, then my said executors, or their successors, shall transfer and convey said above-mentioned half of said rest, residue and remainder of my said property and estate to such his child or children absolutely ; if he, in such event of his death, within the periods last afore-

74

said, should leave no child or children him surviving, but should leave a wife him surviving, then she is to have and I devise and bequeath to her one-half of the income of said half of the rest, residue and remainder of my said property, so long as she shall remain his widow unmarried, the other one-half of said income is to be held by my said executors or their successors and paid by them to and for the use of daughter Eliza A. McIntyre; in case the wife of my said son should marry again, then the share of said income so bequeathed to her is to go to my daughter, Eliza A. McIntyre, if she then survives; if not, to her children.

" If my said son Rhea should die before my said executors or their successors, shall, under the foregoing provisions transfer and convey to him the said one-half of the rest, residue and remainder of my said property and estate, leaving no child or children or wife him surviving, then my said executors or their successors are to hold said one-half of said rest, residue and remainder, and I bequeath and devise the same to them in trust to pay the rents, issues, profits and income, of the same to and for the use of my said daughter, her husband and children, under and upon the same trusts, and for the same periods, as are herein below provided in regard to the other one-half of said rest, residue and remainder of my property and estate herein below devised and bequeathed.

" *Fourth.* The other one-half of all the rest, residue and remainder of all my said property and estate remaining after deducting the homestead and the articles and property bequeathed in the above paragraphs of this will, marked " First " and " Second," I will, devise and bequeath to my executors, hereinafter named, and their successors, in trust to receive the rents, profits and income thereof (including half the interest on moneys invested), and apply them to the use of my daughter, Eliza A. McIntyre, for and during her natural life, and from and after her death, to the use of her husband, Samuel B. McIntyre, and of her children equally, share and share alike, for and during the life of said Samuel B. McIntyre, that is, her said husband is to have one share and

each of her children is to have one share of said income, but if said Samuel B. McIntyre should marry again after the decease of my said daughter, then his share of said income is to cease, anything herein to the contrary notwithstanding.

"If my said daughter should die leaving no child or children, but leaving a husband, said executors or their successors shall apply the rents, profits and income of said half of said remainder of my estate to his use so long as he remains single and unmarried, and no longer.

"And if my said daughter should die leaving no husband, but leaving child or children, then my said executors, or their successors, are to transfer and convey the said last-mentioned one-half of said rest, residue and remainder of my said property and estate to such her child or children absolutely and equally, and in that case I will and devise the same to them.

"If my said daughter should die leaving a husband and a child or children, then at and after the death or remarriage of her said husband, said executors or their successors are to transfer and convey said half of said rest, residue and remainder of my said property and estate to her said child or children, and I will and devise the same to them in that event.

"If my said daughter should die leaving no husband or children, then and in that case said half of said residue and remainder of said estate shall go to my executors aforesaid, and their successors, the rents and profits and income thereof to be paid and applied by them to the use of my said son Rhea for the same time as is above provided for the other half of said residue and remainder, and upon the same trusts, for the same length of time, and upon the same conditions as is above provided for the other half of said residue and remainder of my said property and estate."

(Subdivision fifth is not material.)

"*Sixth.* I will and direct that a home shall be provided for my wife's sister, Euretta Miles, for and during her life, at my homestead, and she shall have her whole support from my estate in sickness and health, and burial, the expenses whereof

shall be paid by my executors out of the net income of the whole of my estate, the burial of said Euretta Miles to be on my lot in the Newark cemetery unless she should dictate otherwise. .

" In case of my son Rhea's death, so he is not at the homestead to keep house, and she should wish to live somewhere else, she is to have the like support elsewhere where she may select.

" *Seventh.* In case I do not put up a family monument on my burial lot in the Newark cemetery during my lifetime, then my executors are to put up one at a cost not to exceed $600.00 nor less than $500.00 within three years after my death, to be paid for out of the income of my whole estate, the character and style of which shall be determined by my son Rhea."

*Stephen K. Williams* for appellant. The clause in question for the benefit of Frances Pomeroy, the son's wife, is not included in the trust. (*Henderson* v. *Henderson*, 113 N. Y. 11; *Greene* v. *Greene*, 125 N. Y. 506; *Mann* v. *Witbeck*, 17 Barb. 392; *Tucker* v. *Tucker*, 5 N. Y. 408; *Hillyer* v. *Vandewater*, 31 N. Y. S. R. 671; *Heermans* v. *Robertson*, 64 N. Y. 332; *Horndorf* v. *Horndorf*, 13 Misc. Rep. 347; *Scholle* v. *Scholle*, 113 N. Y. 261; 2 Jarman on Wills, 842; *Mullarky* v. *Sullivan*, 136 N. Y. 227; *Lamb* v. *Lamb*, 131 N. Y. 227.) The plaintiffs have determined their rights by their own action, and also are estopped from setting up the invalidity of this provision. (*Starr* v. *Starr*, 132 N. Y. 159; *Reid* v. *Sprague*, 72 N. Y. 457; *Chipman* v. *Montgomery*, 4 Hun, 742; *T. L. O. Co.* v. *Marbury*, 91 U. S. 557, 594; *Evers* v. *Watson*, 156 U. S. 527; *Simmons* v. *B., etc., R. Co.*, 159 U. S. 278; *Sullivan* v. *P., etc., R. Co.*, 94 U. S. 806; *Marbury* v. *Stone*, 17 App. Div. 352; *Kent* v. *Q. M. Co.*, 78 N. Y. 159; *N. B. Nat. Bank* v. *C. Co.*, 91 Hun, 447; *Skinner* v. *Smith*, 134 N. Y. 240.) If the provision for the son is within the trust it is valid, notwithstanding *Schettler* v. *Smith* (41 N. Y. 328). (Ferne Cont. Rem. 523; 20 Am. & Eng. Ency. of Law, 951; 1 R. S. 723, § 14; *Reid* v. *Bd. Suprs.*, 128 N. Y. 370; *Shipman*

v. *Rollins*, 98 N. Y. 330 ; *Tiers* v. *Tiers*, 32 Hun, 185 ; 98 N. Y. 569 ; *Cochrane* v. *Schell*, 64 Hun, 577 ; 140 N. Y. 526 ; *Kiah* v. *Grenier*, 56 N. Y. 224 ; *Monarque* v. *Monarque*, 80 N. Y. 326 ; *Wilson* v. *White*, 109 N. Y. 59 ; *Horton* v. *Cantwell*, 108 N. Y. 268 ; *Fleming* v. *Burnham*, 100 N. Y. 10 ; *Post* v. *Hover*, 33 N. Y. 602 ; *Moore* v. *Appleby*, 36 Hun, 371 ; *Campbell* v. *Stokes*, 142 N. Y. 23.) If the provision for the widow is invalid, she still has an interest in the estate, dower and a distributive share of the personalty. (1 R. S. 727, 729, §§ 45, 60, 61 ; *Adams* v. *Perry*, 43 N. Y. 496 ; *In re Livingston*, 34 N. Y. 555 ; *Stevenson* v. *Lesley*, 70 N. Y. 512 ; *Warner* v. *Durant*, 76 N. Y. 133 ; *Robert* v. *Corning*, 89 N. Y. 240 ; *Goebel* v. *Wolf*, 113 N. Y. 405 ; *Livingston* v. *Greene*, 52 N. Y. 118 ; *Hawley* v. *James*, 16 Wend. 188 ; *In re Mahan*, 98 N. Y. 376 ; *Wimple* v. *Fonda*, 2 Johns. 288 ; *Radley* v. *Kuhn*, 97 N. Y. 35.) The construction of the will, adopted by the Special Term and Appellate Division, makes the whole trusts to continue through more than two lives in being, and makes the whole trusts void as violating the statute against perpetuities. (*Cotting* v. *Schermerhorn*, 35 N. Y. S. R. 125 ; *Colton* v. *Fox*, 67 N. Y. 348 ; *Tilden* v. *Green*, 130 N. Y. 50 ; *Benedict* v. *Webb*, 98 N. Y. 460 ; *Holly* v. *M. R. Co.*, 9 Misc. Rep. 702 ; *Amory* v. *Lord*, 9 N. Y. 411 ; *Clemens* v. *Clemens*, 60 Barb. 369 ; 37 N. Y. 59. *Brandt* v. *Brandt*, 68 N. Y. S. R. 412.)

*Francis M. Finch* for appellant. The testator gave to the son's widow, directly and without intervention of trust or trustee and as a legal instead of an equitable estate, the one-half of the income of half of the residue and remainder. (*Matteson* v. *Matteson*, 51 How. Pr. 276 ; *Griffen* v. *Ford*, 1 Bosw. 123 ; *Mason* v. *Jones*, 2 Barb. 229 ; *Manice* v. *Manice*, 43 N. Y. 303 ; *Purdy* v. *Hayt*, 92 N. Y. 456.) All the admitted canons of construction forbid the theory .hat the legacy of income to Mrs. Pomeroy was involved in the trust and covered by it. (*Vanderpoel* v. *Loew*, 112 N. Y. 184 ; *Wright* v. *Drew*, 10 Wheat. 239 ; *Dawes* v. *Swan*, 4 Mass. 208.)

*Thomas Raines* for respondents. The intention of the testator governs. The general intent overrides any particular intent. That intent is to be ascertained from the language of the will, and when that is expressed in unambiguous language no interpretation is required. (Potter's Dwarris on Stat. 126; 2 Jarman on Wills, 743.) The provisions of the will relative to the contingency of Rhea leaving a widow and no child are void under the statute, as they suspend the power of alienation for a period of more than two lives in being at the execution of the will and at the death of the testator. (*Underwood* v. *Curtis*, 127 N. Y. 537; *Coster* v. *Lorillard*, 14 Wend. 265; *Cross* v. *U. S. T. Co.*, 131 N. Y. 330; *Lee* v. *Tower*, 124 N. Y. 375; *Schettler* v. *Smith*, 41 N. Y. 328; *Gott* v. *Cook*, 7 Paige, 521; 24 Wend. 641; *De Kay* v. *Irving*, 5 Den. 646; *King* v. *Rundle*, 15 Barb. 145; *Brown* v. *Evans*, 34 Barb. 605; *Yates* v. *Yates*, 9 Barb. 345; *Savage* v. *Burnham*, 17 N. Y. 561; *Oxley* v. *Lane*, 35 N. Y. 340.) The counsel for defendant Frances endeavors, by an extremely forced construction of the provisions of the will relating to the possible widow of Rhea, to change such widow to a legatee from a beneficiary and *cestui que trust.* He claims that the income comes to her as a legacy, and that by the words "give, devise and bequeath" such income is taken entirely out of the general trust; and that the testator so intended. This position is untenable. (*In re Truslow*, 140 N. Y. 605; *Noyes* v. *Blakeman*, 6 N. Y. 567; *Marx* v. *McGlynn*, 88 N. Y. 357; 1 R. S. 2179, § 16; *Underwood* v. *Curtis*, 127 N. Y. 523.) The claim of the appellant, that if the provision for a possible widow of Rhea be held to be invalid all the trusts declared in the will must also be held invalid, and that Dr. Pomeroy died intestate as to the entire residuary estate, is not well founded. (*Griffen* v. *Ford*, 1 Bosw. 123.) The suggestion that Frances Pomeroy has a dower and a distributive share of the personalty is unsound. (*Smith* v. *Rockefeller*, 3 Hun, 295; *Caw* v. *Robertson*, 5 N. Y. 125; 2 Wms. on Exrs. [5th ed.] 125; *Newell* v. *Nichols*, 75 N. Y. 78; *Rushmore* v. *Rushmore*, 12 N. Y. Supp. 776.) The

appellant has no equities superior to those of the heirs of Dr. Pomeroy. (*Tiers* v. *Tiers*, 98 N. Y. 568.)

BARTLETT, J.  This is an action to construe a will and the courts below have held that the widow of testator's son was provided for in a trust, void as to her, for the reason that it created an illegal suspension of the power of alienation.  In other words, the will is held to have created but a single trust, and that it is only invalid as to the widow of the son, but stands for all other purposes.  We are unable to adopt this construction, and before deciding the effect that must be given to the instrument, it is proper to consider the situation of the testator at the time he decided upon the testamentary scheme which appears not only on the face of the will, but is justified by those considerations that must have acted upon his mind in forming that intention which is manifested in the final disposition of his estate.

The testator was a prominent physician, possessed of an estate consisting of several farms, a hotel, five dwelling houses, a homestead and considerable personal property.  He left two children, a married daughter and an unmarried son ; the daughter had two minor children ; the son was dissipated. The testator was a widower, but his deceased wife's sister, Euretta Miles, resided in his family.

If anything is absolutely clear in the scheme of the will it is the intention of the testator that his property should follow his blood in the ultimate disposition thereof, and that the widow of his son, if such a contingency ever presented as the death of the son leaving a widow and no children, should be entitled to a certain portion of the income of the estate only so long as she remained unmarried.

The testator was confronted by the task of dealing with two distinct and entirely different situations.  The first was to determine how he should provide for his unfortunate son, about thirty-one years of age at the time the will was executed in 1884, who might survive for many years, marry, have children, and possibly forsake his evil habits.  The second was to

provide for a daughter with a living husband and minor children, and secure a portion of his property to the latter.

In view of this state of affairs it was natural that the testator, when he came to dispose of the residue of his estate, should seek to carry out his scheme by the erection of two distinct trusts. An inspection of the will discloses a plan in entire harmony with the motives that influenced the testator when he drew it.

In the first clause he devises the homestead to his son for life, and after his death, if he leaves a wife with children, a life estate in wife and fee to children. If the son died childless, the testator's daughter took a life estate and the fee went to her children.

We have here a clear indication of the manner in which the testator proposed to deal with the widow of the son. He seemed to contemplate her existence as not only possible, but probable, and carefully guards the fee of his real estate so that it shall follow his blood. This provision as to the homestead shows the affectionate regard and solicitude entertained by the testator for his son.

The second clause bequeaths certain valuable personal property to the son, and is only important as emphasizing testator's love for him. The third clause creates a separate trust in favor of the son, and the fourth clause erects still another dealing with the interests of the testator's daughter, husband and children.

The third clause is in one respect inartificially drawn, but there is no serious difficulty in construing it, and the intention of the testator is clear. It opens with the formal words devising and bequeathing the residue of his property to his executors for the purposes of certain trusts.

These words may be treated as merely introductory, as they are followed by apt language in the third and fourth clauses creating separate trusts, each embracing one-half of the residuary estate. These trusts are not only separated by the arrangement of the will on its face, but in substance and subject-matter.

The trust for the son opens with the following language: " The equal one-half of said rest, residue and remainder of my said property and estate I will, devise and bequeath to my said executors and their successors, in trust, to receive the rents, issues, income and profits (including one-half of the interest on moneys invested) thereof, and pay and apply the same to and for the use of my son, Rhea B. Pomeroy, until he shall arrive at the age of forty-five years, if he shall so long survive, or in case my said son Rhea should not live to reach the age of forty-five years, then to apply the same to the use of my said son during his life."

As the son died before he attained the age of forty-five years, we need not examine those provisions regulating the manner in which the trustees were to deal with him and his interests after he attained that age. It suffices to say that the trust was measured by the duration of his life only. The trust provided that the executors could sell no real estate without the son's consent, and he was to advise as to rebuilding and repairs.

It also provided that, if the son died leaving a child or children, the executors should convey the half of the residue of his estate to such child or children absolutely.

This is of no importance save as it still further shows the regard which the testator had for his son and his children, if any should be born to him.

The son died childless, but he left a widow, and this brings us to the disputed clause in the will. It reads: " If he, in such event of his death, within the period last aforesaid " (forty-five years); " should leave no child or children him surviving, but should leave a wife him surviving, then she is to have and I devise and bequeath to her one-half of the income of the said half of the rest, residue and remainder of my said property, so long as she shall remain his widow, unmarried; the other one-half of said income is to be held by my said executors or their successors, and paid by them to and for the use of my daughter, Eliza A. McIntyre. In case the wife of my said son should marry again, then the share of said

income so bequeathed to her is to go to my daughter, Eliza A. McIntyre, if she then survives; if not, to her children."

In the courts below the trust for the daughter in the fourth clause, which conveys to the executors in separate and apt words the other half of the residue of the estate in trust for the benefit of the daughter, including her husband and children, is blended with the son's trust and treated as a single trust, and the clause just quoted in favor of the son's widow is declared void, for the reason that it contains an attempted suspension of the power of alienation of a portion of testator's property beyond the period permitted by statute, as the son did not marry until after the death of the father, and there was the possibility that he might take as wife one not in being at testator's death.

We are not called upon to pass upon the correctness of this decision, supported as it is claimed by *Schettler* v. *Smith* (41 N. Y. 328), as the existence of two distinct trusts renders it unnecessary, but we do not wish to be regarded as yielding even an implied assent to the decision of the court below, or the binding force of the authority cited, by reason of our resort to a different construction of this will.

Treating the trust for the benefit of the son as distinct from his sister's trust, we have now to consider the effect of the son's death upon the principal of the fund.

A reading of the provisions for the benefit of the son's widow, that we have already quoted in full, shows that when the testator vested in the widow the right to one-half of the income of the trust estate during her widowhood or life, if she never remarried, he uses very different language than that employed by him when he secures the other half of the income of this trust share to his daughter.

When dealing with the son's widow he says, " she is to have and I devise and bequeath to her," etc. As to the other half of the income he says, " it is to be held by my said executors or their successors and paid by them to and for the use of my daughter, Eliza A. McIntyre."

The legal effect of the son's death was to terminate the

trust for his benefit, and the devise and bequest of one-half of the income of the principal theretofore tied up in the trust, to his widow, vested in her a legal estate in one half of the principal, real and personal, to wit, a life estate during her widowhood, under the familiar principle that a gift of the rents and profits of land, or gift of the income arising from personal property, vests such an estate in the devisee or legatee as conforms to the evident intention of the testator. (*Paterson* v. *Ellis,* 11 Wend. 298 ; *Smith* v. *Post,* 2 Edw. Ch. 527 ; *Hatch* v. *Bassett,* 52 N. Y. 362 ; *Locke* v. *Farmers' Loan & Trust Co.,* 140 N. Y. 146.)

During the time the son's widow remains unmarried, which may be her life, she is, by virtue of her life estate, a tenant in common with the owners of the principal of the share which was released from the trust for the benefit of the son by his death.

The fact that the executors, as such, may have to deal with the income of the vested interests in order to carry out the provisions of the will does not create any illegal suspension. (*Gilman* v. *Reddington,* 24 N. Y. 9–18.)

It is clear that the provision for annual repairs of the homestead in the first clause of the will, and for the support of Euretta Miles in the sixth clause, and for the erection of a monument in the seventh clause, are no part of the trusts created for the son and daughter respectively, but are general charges upon the entire income of the estate, which must be paid by the executors as such and not by them as trustees.

These charges will of course diminish the income of the trust estates, and all interests which vested at the termination of the son's trust are subject to their payment in due proportion.

It is very common to make annuities, or other payments, a charge upon an entire estate without regard to whether it is carved up into trusts or vested interests, and such a lien is a testamentary incumbrance which follows the estate under all the provisions of the will.

We have not considered it essential or proper to decide all

of the questions which were deemed presented by the court below.

This appeal requires us to determine the interest in the estate of the testator of the defendant and appellant, Frances Pomeroy, the widow of Rhea Pomeroy.

This question we have decided.

The judgments of the Special Term and Appellate Division should be reversed and judgment ordered for the appellant Frances Pomeroy in accordance with this decision, with costs to her in all the courts payable out of the estate.

All concur, except HAIGHT, J., absent.

Judgments reversed.