In the Matter of the Estate of LYDIA SMITH BENTON, Deceased.

Surrogate's Court, Oneida County, November 6, 1933.

*Fuller, Brown & Hubbard* [*Bradley Fuller* of counsel], for the Oneida National Bank of Utica.

*Samuel Willig* [*Ernest P. Felt* of counsel], for Jack Estes, coexecutor.

*William L. Burke*, as special guardian of Lydia Jean Maynard a minor.

*Miller & Hubbell* [*Arthur Evans* of counsel], for the First Citizens Bank and Trust Company.

EVANS, S. This is a proceeding to construe the last will and testament of the above-named testatrix, who died on or about October 14, 1928. Her will is dated April 24, 1928, and was admitted to probate in this court on October 17, 1928.

·The paragraphs of the will that are now necessary to consider read as follows:

" *Third.* I give and bequeath to First Bank and Trust Company of Utica, the sum of thirty thousand dollars ($30,000.00), in trust

nevertheless, and for the following purposes: to keep said sum legally invested and to pay the income therefrom, at least each six months, to my granddaughter, Mrs. Frances Dixon Maynard, until she attain the age of thirty-five years, and then to pay to said granddaughter the principal of said trust fund and any accumulated unpaid income. Should my said granddaughter die before she attain said age of thirty-five years leaving no issue her surviving, then and in that event said trust fund and any unpaid income shall be paid in equal shares to my other grandchildren then surviving."

" *Seventh*. I give and bequeath the sum of ten thousand dollars ($10,000.00) to First Bank and Trust Company of Utica, in trust nevertheless, and for the following purposes: to keep the same legally invested and devote the income to the support and education of my great granddaughter, Lydia Jean Maynard during her minority, and to pay over the principal of said trust fund to said great granddaughter when she attains her majority. Should said great granddaughter not attain her majority then said trust fund and any accumulation of income are to become the property of my said granddaughter, Mrs. Frances Dixon Maynard.

" *Eighth*. All the rest, residue and remainder of my property, both real and personal and wheresoever situated, I give, devise and bequeath unto my said granddaughter, Mrs. Frances Dixon Maynard and to her issue. Should my said granddaughter die without issue her surviving, then I give, devise and bequeath such residue to and between my other grandchildren, share and share alike."

The executors have accounted in this estate and distributed the residue thereof to the residuary legatee named in the will, viz., Frances Dixon Maynard, who received property at an agreed valuation in excess of $100,000. The trustee named in the will filed its consent to act as such on December 1, 1928, and proceeded to administer the trust and paid the income to Frances Dixon Maynard. On April 2, 1932, she assigned to the Oneida National Bank and Trust Company of Utica the $30,000 legacy as collateral security for loans. This assignment was duly filed and recorded in the surrogate's office of Oneida county on April 5, 1932. Frances Dixon Maynard died on January 26, 1933, leaving a last will and testament by which she left her property to her daughter, Lydia. There is no direct evidence to this effect but I think that all interested parties concede that the estate is insolvent.

Frances Dixon Maynard died without attaining the age of thirty-five years, and left her surviving as her only issue a daughter, Lydia Jean Maynard, who was born on January 5, 1926. On this state of

facts the question is presented as to whom the trust fund shall be paid. It is an axiom of construction that the primary duty of a court is to ascertain the intent of the testator. This is so well established as to dispense with the need of citing cases. It is obvious that no two wills can be exactly alike. There is an expression current among the legal fraternity that "no will has a twin brother." The hands of human beings of the same race have a general resemblance but it is generally accepted as a fact that no two fingerprints are alike.

It would seem that in order to gauge the mental attitude of the testatrix in so far as this trust is concerned we must apply to the act the commonly accepted standards of reasoning.

It is evident that the granddaughter held a high place in the affections of the grandmother. It was to her that the bulk of the estate was given.

With an immediate gift of over $100,000 to Frances Dixon Maynard, what motive impelled the testatrix to reserve $30,000 as a trust fund for the same person to be held until she attained the age of thirty-five years? It seems to me that the testatrix with rare foresight made provisions for exactly what happened within a brief period after her death. The trust fund may be termed "an anchor to windward." It is evident that the testatrix realized the possibility that the residuary estate might vanish by reason of extravagance, unfortunate investments, shrinkage in value of securities and a variety of other causes. In this event she provided the trust fund of $30,000 to be paid over to Frances Dixon Maynard when she had attained the mature age of thirty-five years, when time and experience had ripened her judgment. In case she did not live until attaining the age of thirty-five years and should be survived by issue, then this fund salvaged from the possible wreck might be applied for the benefit of her surviving child or children.

If we adopt a theory that it was the intent of the testatrix to immediately vest the trust fund in Frances Dixon Maynard and merely delay the time of payment, such an argument falls from its own weight. This construction would enable her to realize at once on the trust fund by assignment and thus defeat the purpose of its creation. It would amount to nothing but a futile gesture on the part of the testatrix.

The facts in *Lewisohn* v. *Henry* (179 N. Y. 352) are quite similar to the case at bar and this case holds that there was no vesting of the share of any child or of any part of it until the time when the child reached the age specified in the will for receiving such share.

Another case directly bearing on the issue under consideration is *Matter of Ridgway* (4 Redf. 226).

There has been in this case some discussion concerning that portion of the third paragraph of the will that reads as follows: " Should my said granddaughter die before she attains said age of thirty-five years leaving no issue her surviving, then and in that event said trust fund and any unpaid income shall be paid in equal shares to my other grandchildren then surviving."

The question raised is whether there was a gift by implication to Lydia Jean Maynard, the surviving child of Frances Dixon Maynard, or whether the trust fund became part of the residuary estate. At the time of the execution of the will of the testatrix, Lydia Jean Maynard, her great-grandchild, was living. The omission to designate her by name indicates to me an intent on the part of the testatrix to include any possible after-born child or children of Frances Dixon Maynard, which accounts for the use of the word " issue." I think that there was a gift by implication of this fund to Lydia Jean Maynard by reason of the fact that her mother did not live to be thirty-five years of age and left no other surviving child. (*Close* v. *Farmers' Loan & Trust Co.*, 195 N. Y. 92; *Matter of Hoffman*, 201 id. 247; *Matter of Moore*, 152 id. 602.)

I reach the conclusion that Lydia Jean Maynard is entitled to all of the trust fund and that her rights are not affected by any assignment.

Decreed accordingly.