ERNEST AUGUSTUS KIRCHHOF and Another, Plaintiffs, *v.* WILLARD
D. RAMSEY and Others, Defendants.

Supreme Court, Warren County, April 5, 1934.

*H. Prior King*, for the plaintiffs.

*Daniel F. Imrie*, for the defendants Lenox A. Ramsey and another.

*John S. Woodward*, for the defendant Willard D. Ramsey.

ROGERS, J.   Asa W. Brayton died in 1895, leaving a last will and testament dated April 2, 1888, which on June 24, 1895, was duly admitted to probate in the Surrogate's Court of Warren county. By his will he made provision for his children and also for his grandson, who lived with him.   The testator was a successful farmer, owning various parcels of lake shore and farm lands at East Lake George, and also an author, the writer of a book about Lake George. He evidently prepared his will without the assistance of a lawyer. His desire, apparent from the will, was to make an equitable division of his property between his living children and the only child of his deceased daughter.

The parties are in dispute as to the meaning and effect of the

provision in the will for the benefit of the grandson and ask that it be construed by the court. It reads as follows:

" *Third.* To my grand-son Willard D. Ramsey, I give & devise a part of my farm [here follows description] & for a part of these lands here given I require & direct the said Willard D. Ramsey to pay to George W. Brayton $600. Six hundred dollars as a part of interest in my estate & I hereby make said legacy of $600. Six hundred dollars to be paid to said George W. Brayton as aforesaid an express charge & lien upon [here follows description]. The above lands here described & devised to Willard D. Ramsey is not free without or from conditions and here I make the conditions below. Willard D. Ramsey shall not sell said lands nor any part of them without the consent of my executors. And I hereby devise one other piece of land to Willard D. Ramsey, the wood lot [here follows description]. But if so be that Willard D. Ramsey shall die & become extinct before a lawful heir is born unto him then the above described lands shall be sold & the net proceeds shall be divided among all of my heirs [naming them]. But no person whatever shall take or get away from Willard D. Ramsey any of these lands for any debt of his contracting whatever. They shall be kept expressly for him to get his living off from them without my executors shall think it best to dispose of them or have Willard dispose of them."

After the probate of the will Willard D. Ramsey entered into and took possession of the premises. He had married the defendant Nela L. Ramsey in December, 1890, and a son, the defendant Lenox A. Ramsey, was born to them in 1898. The legacy to George W. Brayton, charged against a portion of the lands devised to Willard D. Ramsey, was paid in 1900, and the lands were duly released from the lien thereof. The two executors are dead. Before their death they executed a consent that Willard D. Ramsey might sell and convey a portion of the premises devised to him. Thereafter he sold four lake shore lots, from the parcel described in the consent.

In 1914 Willard D. Ramsey mortgaged, to secure the payment of the sum of $500, all of the premises described in the third paragraph of the will. This mortgage was satisfied and discharged in 1923. In April, 1923, Willard D. Ramsey executed another mortgage, to secure the payment of the sum of $1,200, conveying all of the premises, except the four lots which he had sold. This mortgage was foreclosed, and the premises sold at public sale on January 24, 1925, to Ernest Augustus Kirchhof, one of the plaintiffs, for the sum of $1,675. The surplus moneys, amounting to $67.92, were paid to Willard D. Ramsey. After the foreclosure sale, and in March, 1925, Willard D. Ramsey was evicted from the premises,

by the sheriff, by virtue of a writ of assistance issued by the Supreme Court.

After the plaintiffs took possession the dwelling house on the premises was destroyed by fire and the plaintiffs received the payment of the insurance thereon. Thereafter the plaintiffs built a new dwelling house upon a portion of the premises, not included within the area described in the executors' consent, although they supposed they were building on that parcel. The will contains no residuary clause as to real estate and the executors were given no power of sale.

Plaintiffs now bring this action, contending that the title of Willard D. Ramsey became absolute upon the birth of his son. The defendants answer, claiming that Willard D. Ramsey took merely a life estate, with a conditional power of sale, dependent upon the consent of the executors, and that the remainder is vested in his son, Lenox A. Ramsey.

In construing the meaning and effect of the provisions in the will, the questions are: What did the testator intend? And, is his intended disposition valid, or otherwise?

Surrogate WINGATE, an experienced interpreter of wills, divides the construction process into two parts: *First*, the function of interpretation of the document, and *second*, that of adjudication of its legal effect. He says in *Matter of McCafferty* (142 Misc. 371): " Only when testator's intention has been ascertained is the stage set for the second act in the construction process, namely, that of adjudication, which consists of the application of recognized rules of law to the dispositive directions, and involves a decision as to how far applicable legal principles will permit effectuation of the devolution desired and expressly or impliedly directed by him."

In *Herzog* v. *Title Guarantee & Trust Co.* (177 N. Y. 86, at p. 91) the court says: " From them [the testamentary instruments] the intention of the testator must be ascertained. The intent to be discovered is not whether he intended to make a valid disposition of his estate, but what provisions he in fact intended to make. When that is found, it is for the court to determine whether such intended provisions are valid or otherwise." The court further says: " The duty of the court is not to make a new will or codicil to carry out some supposed but undisclosed purpose, but to ascertain what the testator actually intended by the language employed by him when properly interpreted, and then to determine whether such intended provisions are valid or otherwise. The duty of the court is to interpret, not to construct; to construe the will and codicil, not to make new ones."

In *Matter of Durand* (250 N. Y. 45, at p. 54) Judge CRANE,

writing for the court, says: " In declaring a testator's intention, however, the courts are limited to the words which the testator, himself, has used in his will." And at page 55 he says: " The purpose which the testator had in mind has failed; the trusts for grandchildren and issue are void; the desire to give these grandchildren the remainder is laudable, but when the will of the grandfather has not done so, nothing remains but intestacy as to this portion. The courts must leave it as if there were no will. No power of revision of wills is intrusted to the courts. In the absence of a disposition by will the statute, not the court, provides for the disposition of the estate."

. In determining the testator's intention consideration may be given to pertinent surrounding circumstances existing at the time the document was prepared and executed. Both parties, in their briefs, take the position that testator drew his own will. Willard D. Ramsey was then living with the testator.

All of the conditions sought to be imposed by the testator upon the devise, even if illegal and void, as claimed by plaintiffs, should be considered in determining the plan which the testator had in mind, when preparing paragraph " third " of his will. Also, the will as a whole may be considered to throw light upon the meaning of the language employed by testator in paragraph " third " of his will.

It seems perfectly clear that the testator did intend to impose conditions upon the devise to his grandson, for he unequivocally so states as follows: " The above lands here described & devised to Willard D. Ramsey is not free without or from conditions and herein I make the conditions below."

The words " conditions below " should be noted, because they import that more than one condition is imposed, and that all of the conditions imposed are to be stated below. Next after the word " below," he states one condition, namely, that Willard D. Ramsey shall not sell without the executors' consent. He then devises the wood lot to Willard D. Ramsey and described it. Then follow the other conditions: " But if so be that Willard D. Ramsey shall die & become extinct before a lawful heir is born unto him then the above described lands shall be sold & the net proceeds shall be divided among all of my heirs. But no person whatever shall take, or get away from Willard D. Ramsey any of these lands for any debt of his contracting whatever. They shall be kept expressly for him to get his living off from them without my executors shall think it best to dispose of them or have Willard dispose of them."

It seems plain that the testator intended to impose all of the conditions upon both pieces of property.

The words " I give and devise," at the beginning of paragraph " third," are the same words that he used in paragraph " second " in giving his son Danforth an estate in fee, and in paragraph " seventh " in giving his son George an estate in fee. Nowhere in the will does he use a phrase, usually employed to pass a title in fee, such as, " I devise in fee," or " I devise absolutely," or " I devise to my son, his heirs and assigns forever." The word " devise " does not necessarily import a fee. The word ordinarily means a plan for the disposition of the testator's real estate, and it may be either an absolute or a qualified disposition. It is properly used to pass either title in fee in real estate or a lesser estate therein. Therefore, when the testator used the words, " I give and devise," followed by words expressly limiting and qualifying ownership, it seems clear that the testator intended to give to his grandson a lesser estate than the fee. In paragraph " eleven " of his will, wherein he disposes of his graveyard, he added the precatory words, " I hereby make a request to Willard D. Ramsey to not rent out his farm or take into his house any family that shall be offensive to my executors."

It is palpable that the testator did not intend his grandson to have title in fee immediately upon his death. His plan was that the property must not be sold without the executors' consent, or used for his grandson's debts. If Willard sold the farm, he wanted it to be a deliberate and advised move, as long as the executors lived to pass upon the advisability of the sale. He wanted Willard to possess it, at least until he had an heir born unto him. If this event happened, he was willing that the expectant remainder in his heirs, which he had provided for, should cease and that Willard should have full control and ownership of the property. He really wanted Willard to have the property, but was fearful that Willard would, as a young man, act ill-advisedly, and lose the means of support which he had planned for him. He, therefore, provided that Willard could sell it, and have the avails of the sale, if the executors, under all the circumstances prevailing, deemed it best. The fact that all the property could be sold and the avails used by Willard for any purpose, provided the executors consented to the sale, indicates, strongly, that the testator wanted his grandson, rather than any remaindermen, to have the full value of the property. He was concerned, however, as to whether his gift to his grandson would be advantageously used by him to provide for his living. If all of it was not sold and Willard had no heir, then he wanted the property to belong to his heirs, and he so provided by making them the remaindermen in the event Willard died without " an heir born unto him." He seemed to assume that if Willard

had such heir, the danger of an improvident sale would be met by the probability that having an heir of his body would be a restraining influence upon Willard, preventing dissipation of the property. He was willing that the restraints in the will be removed upon Willard having an heir of his body.

The defendant Lenox A. Ramsey contends that the testator intended, if Willard had an heir of his body, the heir should become the remainderman, in the place of the testator's heirs, whose interest as such remaindermen ceased when the heir was born. The answer to this contention is that the birth of the heir was an event intended by the testator to terminate the expectant remainder, then existing, not to create a new remainder. The testator expected Willard to have children. " But if so be " he had none, then he wanted his heirs to share. If he had wanted Willard's children to share, there is no explanation why he did not so state. He was very explicit in his testamentary declarations, even to the point of reiteration, and yet there is no word of devise to Willard's descendants. But it is argued that the testator by inference and implication created the heirs of the body of Willard as remaindermen, and that the testator inadvertently omitted a specific provision to that effect. Inference and implication are insufficient to override the specific words, " I give and devise," which create and define Willard's estate, and this is so notwithstanding that these words were coupled with conditions relating to matters other than a remainder. To limit the devise to a life estate would require very clear and definite proof that the testator so intended.

In *Tillman* v. *Ogren* (227 N. Y. 495) the court says: " A gift to one followed by a gift to another of such part thereof as may remain at the decease of the first taker, can be enforced when the intention of the giver is *clear and definite* to limit the gift to the first taker to a life estate."

In *Matter of Arrowsmith* (162 App. Div. 623) the court says (at p. 626): " It is a well-established rule that whenever a will begins with an absolute gift, in order to cut it down, the latter part of the will must show as clear an intention to cut down the absolute gift as the prior part does to make it." (*Clay* v. *Wood*, 153 N. Y. 134; *Foose* v. *Whitmore*, 82 id. 405.)

In *Clarke* v. *Leupp* (88 N. Y. 228) the court says (p. 231): " It is well settled by a long succession of well considered cases, that when the words of the will in the first instance clearly indicate a disposition in the testator to give the entire interest, use and benefit of the estate absolutely to the donee, *it will not be restricted or cut down* to a less estate by subsequent or ambiguous words, *inferential in their intent.*"

In *Matter of Durand* (250 N. Y. at p. 55) Judge CRANE writes: "Even if we thought that Mr. Durand would have followed the interpretation which the lower courts have put upon this will, the fact is he did not do so, and the courts cannot reconstruct wills in accordance with *the near intention* of the maker."

In *Clay* v. *Wood* (*supra*) appears this language: "Where there is an absolute gift of real or personal property, in order to qualify it, or cut it down, the latter part of the will should show an equally clear intention to do so, *by the use of words definite in their meaning, and by expressions which must be regarded as imperative.*"

There was nothing illegal in the testator's plan. He could legally, by the use of appropriate language, create a life tenancy with a conditional power of sale, together with an expectant remainder in testator's heirs in any of the property unsold at the life tenant's death, subject to being defeated upon the happening of a certain event, as the birth of a child, whereupon title absolute vested in the life tenant. I think the language used effects this purpose. The testator stated that he devised the lands to Willard. He stated that Willard might, with the consent of the executors, sell. He stated who the remaindermen were to be in the event Willard died without an heir of his body. He did not state that the heirs of Willard's body should become remaindermen. No provision for any remainder was made in the event Willard was alive when an heir of his body was born.

Upon the birth of the child Willard stood in the position of having been given the possession, together with the right to the income and the profits of the farm, with no remainder provided for. Therefore, by operation of law, there being no other disposition of the lands, title in fee devolved upon him "under the familiar principle that a gift of the rents and profits of land, or gift of the income arising from personal property, vests such an interest in the devisee or legatee as conforms to the evident intention of the testator." (*Durfee* v. *Pomeroy*, 154 N. Y. 583.)

The precatory words to the effect that the farm should be kept to furnish a living for Willard and that no person shall take or get the farm away from Willard for any debt contracted by him, do not operate to prevent his absolute and unqualified ownership, because they are repugnant to the language creating the estate, "I give and devise."

"But it is a well established principle that where an estate in fee simple is granted, a condition that the grantee shall not alien the land is void." (*DePeyster* v. *Michael*, 6 N. Y. 467.)

In *Livingston* v. *New York, Ontario & W. R. Co.* (193 App. Div. 523) Judge WOODWARD, writing for the Third Department, says:

" Lands granted in fee on condition that the grantee shall not enjoy the lands, or shall not take the profits of the lands; or on condition that the heir of the grantee shall not inherit the lands; or on condition that the grantee shall not do waste, or on condition that his wife shall not be endowed, in all these and the like cases, the condition is void as repugnant to the estate." It is also said: "A condition annexed to an estate given, is a divided clause from the grant, and therefore cannot frustrate the grant precedent, neither in anything expressed, nor in anything implied which is of its nature incident and inseparable from the thing granted." Judge WOODWARD further states: " The ownership of the fee cannot exist in one person while the ownership of the right of alienation and its fruits exist in a different person. * * * It is the condition which the testator sought to impose upon the grant, and not the grant itself, which is void, and when that which is void is eliminated there is perfectly good devise of the fee of the Sullivan county farm in the plaintiff in this action, and there is no reason to suppose that the testator would have made any different disposition of his estate if he had appreciated the limitations which the law imposes."

Among the other numerous authorities to the same effect are: *Continental Insurance Co.* v. *N. Y. & Harlem R. R. Co.* (187 N. Y. 225); *Tillman* v. *Ogren* (227 id. 495); *Hacker* v. *Hacker* (153 App. Div. 270); *Matter of Tallman* (131 Misc. 863).

Nor does the conditional power of sale in Willard prevent his taking absolute ownership upon the birth of his son.

" Where to a devise of a fee is added a power of sale, the devisee and donee being the same person, the power is merged in the fee and is inoperative." (*Jennings* v. *Conboy,* 73 N. Y. 230; *Matter of Rothyen,* 115 App. Div. 646; *Fay* v. *Taylor,* 31 Misc. 32.)

The testator did not die intestate as to any interest in the farm described in paragraph " third." He had no thought of his heirs receiving any interest, except in the event no child was born to Willard. Otherwise, he would not have provided for a remainder in them, only in the event no child was born to Willard. That he did not expect his heirs to inherit, coupled with no other disposition in the will than to Willard if a child were born to him, is strong indication that Willard's ownership became absolute upon the birth of his child.

If the foregoing views are correct, it follows that Willard D. Ramsey was the owner in fee simple at the time he gave the mortgage and that plaintiffs' title under the referee's deed in the foreclosure proceeding is good, and that being so, there are no equities to be adjusted.