Bernard Ryan, P. J.
The State of New York, by the Niagara Frontier State Park Commission, appropriated 83.788 acres of claimant’s lands in the town of Brant, Erie County, for Evangola State Park. Claimant’s entire tract with frontage of 1,927 feet on Lake Erie, and with all improvements thereon, was taken. The map and description were filed in the Erie County Clerk’s office on February 23, 1954. Thereupon title vested in the State. (Conservation Law, § 676-a, subd. 8.)
*885 On. March 13, 1954, the park commission and the claimant entered into a written agreement which is entitled: “ Permit for Occupancy of Land and Improvements in the southwest corner of Evangola State Park ” and which names the park commission as “landlord” and the claimant as “tenant.” It describes “ the premises covered by this permit ” by boundaries which include the area of the main dwelling house and it provides that the tenant shall use the premises for residential purposes “ as long as the tenant shall live, to commence on the 15th day of March, 1954, at the monthly rental of two dollars ($2.00) payable by the tenant to the landlord monthly in advance on the first day of the month.” The tenant is to provide and pay for water, lights, utilities, heat and all other expenses in and about the use and occupation of the premises and will make all repairs to walls, plumbing, etc. The instrument further recites: “In case the premises, during the term hereby created, shall be destroyed or damaged by fire or other unavoidable casualty so that the same shall be thereby rendered unfit for the tenant as a residence, the relation of landlord and tenant herein created at the option of the landlord shall wholly cease and determine.” There is also this further provision: “ in the event of a violation by the tenant of any restriction or condition herein imposed, this permit shall, at the option of the landlord, cease, determine and be at an end ”.
Upon the trial the claimant’s age was established as 78 years as of March, 1954. According to the American Experience Table of Mortality his life expectancy was then 5.10 years. The document was offered and received in evidence. As the writing resolved the agreement between the parties any testimony which would tend to vary its terms would properly have been excluded. However, none was offered.
The Attorney-General now asserts, and asks us to find, as a fact, that the fee of the lands appropriated “ is subject to claimant’s life estate, the creation of which is in substance part of the same transaction as the appropriation.” Also, the Attorney-General requests that we find, as a fact, that “ the difference between the value of the life estate granted by the appropriating agency to the claimant and the nominal consideration for the life estate must be taken into account in computing the award.” We are then asked to compute the value of the life estate, make the allowance and deduct the difference from the sum of our award.
The two requests to find facts, to which we have referred, are, of course, proposed conclusions of law. They are con *886 elusions at which we do not arrive for the following reasons: The instrument in issue is a conveyance within the meaning of the statute and must be construed according to the intent of the parties, so far as such intent can be gathered from the whole instrument, and is consistent with the rules of law. (Real Property Law, § 240, subds. 2, 3.) A life estate is a freehold estate (Real Property Law, § 33). It is not merely a right to occupy the property. (Matter of Gaffers, 254 App. Div. 448.) And although the courts seem to favor life estates it is essential to distinguish between such an estate and a mere right of occupancy. (See 3 Warren’s Weed on New York Real Property Law, pp. 206-210 and cases cited for the character of a life estate.) The instrument under consideration does not meet the required tests of character. Nor does it prescribe the rights and liabilities usually devolving upon the owner of a life estate. ( 3 Warren’s Weed on New York Real Property Law, pp. 210-219 and cases cited.) On the contrary it makes the claimant only a permittee or at best a tenant on a month to month basis, dependent upon the advance payment of an agreed rent. This rent reserved, however minimal, is a valid and valuable consideration. In addition, there are other contingencies such as the loss of the dwelling house by fire which may result in the tenant’s eviction. His occupancy is altogether distinctive from that of the owner of a life estate.
We conclude that claimant is entitled to recover, without deduction, the full amount of the award which we make for the value of the real property appropriated from him, as set forth in a formal decision filed herewith.