Lawrence D. Wood, S.
This is a proceeding for the construction of the last will and testament of Catherine Vetroock, also known as Katherine Vetroock, late of the City of Syracuse, County of Onondaga and State of New York. Decedent, Catherine Vetroock, also known as Katherine Vetroock, died April 8,1961, leaving a last will and testament dated August 21, 1954, which was admitted to probate on May 17, 1961 in the Onondaga County Surrogate’s Court. Letters testamentary were issued to petitioner, Bose (Vetroock) Winnicki, daughter of said decedent, on May 17, 1961. Rose Winnicki was the only child of decedent, and at the time of the death of the testatrix, Rose had only one child, Sharon C. Winnicki, only granddaughter of the testatrix, who was living at the time of testatrix’ death.
Decedent left the following assets:
(a) A savings account No. 269659, in the Syracuse Savings Bank in the sum of $7,978.58 in the name of “ Katherine Vetroock or Sharon Catherine Winnicki, either or survivor may draw”, (b) A savings account No. 586,870 in the Onondaga County Savings Bank in the sum of $8,286.98 in the name of “ Mrs. Catherine Vetroock in trust for Sharon Catherine Winnicki ”. (c) A savings account No. 55089 in the First Trust and Deposit Company in the sum of $9,180.76 in the name of “Mrs. Catherine Vetroock as trustee for Sharon Catherine Winnicki ”. (d) A savings account No. 24515 in the First Federal Savings and Loan Association of Syracuse in the sum of $8,483.54 in the name of “ Catherine Vetroock, in trust for: Sharon C. Winnicki”. (e) A four-family *1075 house known as 424 Madison Street, Syracuse, New York and an adjoining lot known as 422 Madison Street, (f) Several Series E United States bonds in joint form with, or payable on death to, Rose Winnieki or Sharon C. Winnicki,
. The form will consists of the general provisions which áre not in question and three added dispositive clauses of all of, which latter clauses a construction is sought. The paragraphs in question are as follows:
“First, I direct that all of my just debts and funeral expenses shall be paid as soon as possible after my death. Second, The balance of my estate which shall be in cash in the Onondaga Savings Bank, Syracuse Savings Bank and/or the First Trust and Deposit Company, I give, devise and bequeath to my executrix, hereinafter named, in trust, and direct my said executrix to divide my estate into as many equal parts as I may have grandchildren living at the time of my death; and to invest each of the said equal parts in such securities as she in her discretion may consider proper, and to accumulate the income arising from each of said equal parts and to pay over one of said equal parts and the accumulations thereto to each one of my said grandchildren when she or he arrives at the age of twenty-one (21) years of age; with the power nevertheless, to invade the corpus and income of each of said equal parts to the care, maintenance, and education of each such grandchild. Should any one of the said grandchildren die before arriving at the age of (21), then I give one said equal part and its accumulations which he or she would have received on arriving at the age of twenty-one years, to such of my said grandchildren as may then be living, of if there are none, to my daughter, Rose. Third: In the event that the real estate at 424 Madison Street in the City of Syracuse, New York State, shall not be sold at the time of my death, I desire that the rents from said property be given to my daughter Rose for her personal use, and that said property shall be turned into cash at the proper time and at the discretion of my executrix, and that the funds therefrom, shall be used by her for equal distribution to each of my surviving grandchildren.”
Several issues are raised as to the meaning and effect of paragraph two. The first is whether or not the reference in paragraph Second of said will referring to the ‘ ‘ Onondaga Savings Bank ” means the Onondaga County Savings Bank. Since there is no other financial institution in the area of a similar name, this issue is decided in the affirmative as having been intended to refer to the Onondaga County Savings Bank in which there was an account.
The second question is whether the word “ of ” as last used near the end of paragraph Second of said will should be “ or ”. This is also decided in the affirmative since the word “ or ” is the most similar word applicable to accomplish the meaning set forth by the context to which the word “ of ” would not apply.
The third issue is whether the establishment of the trust in paragraph Second of said will constitutes an effective revocation of the form of the deposits in the Syracuse Savings Bank, the Onondaga County Savings Bank and the First Trust and Deposit Company, expressly mentioned in said paragraph, and whether or not the funds in said deposits shall be distributed and admin *1076 istered in accordance with the provisions of said paragraph Second.
The petition of Eose Winnicki states that the passbooks to all the above accounts specifically referred to in paragraph Second of the will were in the possession of Catherine Vetroock also known as Katherine Vetroock, and that no one other than said decedent made deposits therein or withdrawals therefrom. These allegations were not controverted. Since the second paragraph of the will specifically mentions two of these accounts by reference to the banks in which the tentative trust form deposits were made, and since no delivery of the passbooks was ever made and no notice was shown to have been given to Sharon Catherine Winnicki, the two trust form savings or special interest accounts, No. 586,870 in the Onondaga County Savings Bank in the sum of $8,286.98 in the name of Mrs. Catherine Vetroock in trust for Sharon Catherine Winnicki, and No. 55089 in the First Trust and Deposit Company in the sum of $9,180.76 in the name of Mrs. Catherine Vetroock as trustee for Sharon Catherine Winnicki are held to have been revoked by paragraph Second of the will. (Walsh v. Emigrant Ind. Sav. Bank, 106 Misc. 628, affd. 192 App. Div. 908, affd. 233 N. Y. 512; Matter of Beck, 173 Misc. 733, affd. 260 App. Div. 651; Thomas v. Newburgh Sav. Bank, 73 Misc. 308, affd. 147 App. Div. 937; Matter of Hattan, 19 Misc 2d 500; Matter of Ludwig, 207 Misc. 860.)
According to the express direction of the will, these accounts are subject to the payment of the just debts and funeral expenses of the testatrix, since after providing first for the payment of debts she declared that the balance of her estate which should be in cash in named banks she left to the trust set up by paragraph Second of the will.
One of the bank accounts referred to in paragraph Second, is set forth in the petition as follows: Savings account No. 269659 in the Syracuse Savings Bank in the sum of $7,978.58 in the name of “Katherine Vetroock or Sharon Catherine Winnicki, either or survivor may draw ”.
Subdivision 3 of section 239 of the Banking Law relating to such joint or survivorship accounts is as follows:
“ When a deposit shall he made by any person in the names of such depositor and another person and in form to be paid to either or the survivor of them, such deposit and any additions thereto made by either of such persons after the making thereof shall become the property of such persons as joint tenants, and, together with all dividends credited thereon, shall be held for the exclusive use of such persons and may be paid to either during the lifetime of both or to the survivor after the death of one of them, and such payment and the receipt or acquittance of the one to whom such payment is made shall be a valid and suffi *1077 eient release and discharge to the savings bank for all payments made on account of such deposit prior to the receipt by the savings bank of notice in writing not to pay such deposit in accordance with the terms thereof The making of the deposit in such form shall, in the absence of fraud or undue influence, be conclusive evidence, in any action or proceeding to which either the savings bank or the surviving depositor is a party, of the intention of both depositors to vest title to such deposit and the additions thereto in such survivor.”
It appears from the statute that upon death of a decedent the surviving joint depositor in a savings bank joint account with said decedent becomes vested with title to the balance of the account at the date of death in the absence of fraud and undue influence. No fraud or undue influence has been alleged.
The statements of the executor’s petition indicate that the testatrix opened the accounts, made all deposits and withdrawals, retaining the passbooks in her possession. There is no claim of her incompetency to understand, or that her vitality was failing, as found in Matter of Creekmore (1 N Y 2d 284, 294) or that the account was opened for convenience only, or that she failed to participate in opening the account as in Matter of Bell (285 App. Div. 995). The Creekmore case (supra, p. 292) seems to stand for the proposition that a properly created joint savings bank account cannot be revoked by a will of previous date referring directly to such accounts, when apparently in the sole name of the depositor at the time of the making of the will, but in joint form at testatrix death. In that ease an attack was made upon the account to show that it was never properly a joint account. Our attention has not been called to any case where the effect of a provision in a subsequent will bequeathing a joint bank account to other than the survivor has been construed. Matter of Brown (26 Misc 2d 1011, 1019, 1021) deals with the effect of a joint will on a joint account and is distinguishable on its facts and reasoning. Our efforts to locate other authority have been unrewarded. In the absence of such authority, and on the facts set forth in this record, it is the opinion of the court that the provision of paragraph Second of the will failed to overcome the conclusive presumption of survivorship under subdivision 3 of section 239 of the Banking Law, and that the surviving joint tenant is entitled to this account. (Moskowitz v. Marrow, 251 N. Y. 380; Marrow v. Moskowitz, 255 N. Y. 219; Inda v. Inda, 32 N. Y. S. 2d 1001, affd. 263 App. Div. 925, affd. 288 N. Y. 315.)
The fourth issue is whether or not paragraph Second of the will applies to any assets of the estate not therein expressly mentioned.
One of the remaining types of personal property of the decedent not previously dealt with here consists of several Series E *1078 United States Government bonds in joint form with, or páyable on death to, Bose Winnicki or Sharon C. Winnicki. Under section 24 of the Personal Property Law of the State of New York where any United States Savings Bond is payable to a designated person as co-owner or beneficiary, and snch bond is not transferable, the right of such person to receive payment may not be impaired or defeated except where the conveyance is fraudulent under article 10 of the Debtor and Creditor Law, or for purposes of proration of any death tax under section 124 of the Decedent Estate Law. There is no claim of fraudulent conveyance here before the court, so that these bonds vest in the co-owner or beneficiary upon decedent’s death subject only to prorata share of the death or estate tax paid thereon.
Other personal property called to our attention is a savings account No. 24515 in the First Federal Savings and Loan Association of Syracuse in the sum of $8,483.54 in the name of “ Catherine Vetroock, in trust for Sharon C. Winnicki ”. This account was not directly referred to in paragraph Second of the will and the first issue is to determine whether it is included under paragraph Second by any express general wording of the paragraph or by a construction of any implied meaning thereof.
The special guardian contends that this account does not come under paragraph Second of the will. The named banks seem to modify and limit the words “ [t]he balance of my estate which shall be in cash ” in that paragraph, the pertinent wording of which is as follows: ‘ ‘ The balance of my estate which shall be in cash in the Onondaga Savings Bank, Syracuse Savings Bank and/or First Trust and Deposit Company, I give, devise and bequeath to my executrix, hereinafter named, in trust ”.
On this wording the court agrees with the special guardian that the First Federal Savings and Loan Association Account is not a part of the bequest under paragraph Second of the will on the basis of a construction of the general wording of the pertinent part of that paragraph as above set forth.
The next issue raised is whether or not the account in the First Federal Savings and Loan Association in the name of “ Catherine Vetroock, in trust for Sharon C. Winnicki” was revoked by paragraph First of the will.
Petitioner would have the court reason that since there are no personal funds other than the named bank accounts, that testatrix intended that debts, funeral expenses and expenses of administration referred to in paragraph First should be paid from unbequeathed funds, and that therefore the form of the trust deposit in Federal Savings and Loan Association should be revoked and the deposit ordered available to the executor as *1079 part of the estate assets. I cannot agree with this contention. Section 394 of the Banking Law provides in subdivisions 3 and 5 thereof as follows:
“3 * s '■ When shares have been issued to a parent, guardian or voluntary trustee for a minor the association may permit the transfer of such shares to the minor by such parent, guardian or trustee and in the event of the death of such parent, guardian or trustee the association may transfer and hold such shares for the exclusive right and benefit of such minor, upon presentation of satisfactory evidence of such death and upon the surrender of certificate, passbook or other proper evidence of ownership of such shares
“ 5. When a person holding shares in trust or as trustee for another dies and no written notice of the existence of an express trust has been filed with the association, the withdrawal value of the shares or any part thereof may be paid to the beneficiary or beneficiaries and the receipt or acquittance of such beneficiary or beneficiaries shall be a valid and sufficient release and discharge to such association for all payments made on account of such shares ”. (Emphasis supplied.)
On the basis of the above statute it appears that this Federal Savings and Loan Trust type account vests in the beneficiary under the trust designation. While such an account is subject to funeral expenses and the reasonable expenses of administration in excess of the general assets of the estate, any excess will belong to the beneficiaries named in the tentative trust since the “presumption” that the trust becomes absolute on her death will only be rebutted to the extent necessary to make these payments. (Matter of Aybar, 203 Misc. 372; Matter of Reich, 146 Misc. 616, 620-621.)
By the provision of the will the two Totten or tentative savings account trusts specifically revoked by the terms of the will are general assets of this estate for payment of debts and funeral expenses, and we include therewith administration expenses, after which the balance becomes the corpus of the trust in paragraph Second. It does not appear that any recourse to the First Federal Savings and Loan Trust account fund, not primarily responsible for funeral and administration expenses, will be necessary here.
The marshalling of the general assets of an estate where the source from which debts, funeral and administration expenses were to be satisfied was not expressly or impliedly directed has been declared to be in the following order: ‘ ‘ First, the personal estate, and of this (a) the personal estate not bequeathed; (b) the personal estate generally bequeathed; '(c) the personal estate specifically bequeathed ; and second, the real estate, and of this (a) property which has descended to the heirs at law; (b) that which is generally devised, and (c) that which is the subject of a *1080 special devise (Duck v. McGrath, 160 App. Div. 482, 488, affd. 212 N. Y. 600; Matter of Manley, 1 Misc 2d 61, 63.)
The assets in the nature of testative trust accounts, joint savings bank accounts and Government bonds designating a beneficiary are not general assets of the estate and thus are reached, if at all, subsequent to the general assets. (Matter of Reich, supra; Matter of Aybar, supra.) Further construction of the entire will, which lacks a residuary clause, as in any way sufficient to revoke the trust account not mentioned or referred to therein is not warranted. There are sufficient funds to meet the expenses of the estate in the revoked accounts. The beneficiary of the trust accounts in the Federal Savings and Loan Association is one of the prime objects of testator’s bounty. A revocation of this account would plunge the status of this fund into the problem of construction as to whether it passed under paragraph Second or by intestacy in the absence of a residuary clause.
The next issue raised is whether or not paragraph Third is precatory, rather than mandatory, and whether or not on that basis and upon its rather vague and indefinite terms, which are claimed to be subject to construction as meaningless and unenforcible, it might be considered ineffective to dispose of premises known as 424 Madison Street, Syracuse, New York. Should it be held to be an effective disposition of the premises there is a request for construction of its exact meaning and the nature and extent of any interests in said premises thereby disposed.
Corollary to the last above issue, the petitioner asks whether or not paragraph Third applies to a lot owned by testatrix adjoining 424 Madison Street, or whether testatrix died intestate as to that lot at 422 Madison Street.
There is no remaining dispute between the parties about the last-mentioned lot owned by testatrix adjoining 424 Madison Street, and the special guardian concedes in his memorandum of law that this particular piece of real property “ was not disposed of in the will either specifically or as part of her residuary estate and must be regarded as passing by the intestate laws of this state ”.
Thus we might have a partial intestacy at the outset as to a piece of real property. We note, however, that while the lots are separately assessed, they appear from the total frontage shown by the petition as assessed to have been deeded to testatrix and her predeceased husband as one parcel. The assessment as shown by the petition covers two lots of 33 feet frontage on Madison Street at numbers 422 and 424 respectively, while the petition recites that the deed shows a frontage of four rods or *1081 66 feet on Madison Street. There are, of course, no ‘1 rents ’ ’ from the vacant lot.
Should intestacy be found to result from paragraph Third of the will, any separate determination of the status of the vacant lot will become academic. However, if a valid testamentary disposition of the property at 424 Madison Street is found; we must construe the will to determine whether the vacant lot is, by virtue of the deed and the testatrix intent, a part of ‘ ‘ premises at 424 Madison Street ” and subject to the terms of its disposition, or a separate entity. If determined a separate entity, it would pass subject to the laws of intestacy since it is not mentioned in the will.
In the absence of a residuary clause, we must determine whether the clause in paragraph Third constitutes a valid testamentary disposition, and whether on its face or by proper construction or implication a sufficiently definite disposition of the title to real property is accomplished.
Testatrix used the word “ desire ” as a preface to the three actions suggested in this clause.
The primary question in every case is the intention of the testator, and whether in the use of precatory words he meant merely to advise or influence the discretion of the devisee, or himself to control or direct the disposition intended. In such a case we must look at the whole will, so far as it bears upon the inquiry, and the use of the words “ I wish ” or “ I desire ” is by no means conclusive. They serve to raise the question but by no means to decide it. (Phillips v. Phillips, 112 N. Y. 197.)
In the first dispositary clause in paragraph First, the testatrix uses the phrase “ I direct ” when providing for payment of debts and funeral expenses, and in the second such clause in paragraph Second, the testatrix used the word “ direct ” in providing for the division of the trust of her estate into shares by her executrix. Yet in this third clause in paragraph Third relating to real property, she uses the precatory type of word “ desire ”.
The attempted distribution under paragraph Third prefaced by the word ‘ ‘ desire ’ ’ grants the income of the property to ‘ ‘ my daughter Rose ” for her “ personal use ”. The clause does not state that the use of the income shall be for any particular or limited term, as for life or a period of years. The only limitation appears in the next phrase or clause of this one sentence paragraph, also subject to or prefaced by the same word “ desire ”. This clause provides that “ said property shall be turned into cash at the proper time and at the discretion of my executrix ” (emphasis supplied). It is significant that Rose, the daughter, *1082 is the executrix and may thus enjoy the rents of the property individually, but shall have the projected right to determine the proper time of sale as executrix. This would seem to indicate that unless some forced sale were required, as by condemnation, that the estate would have to remain open until Rose, the executrix and individual life tenant, decided it was the proper time to sell. If the third phrase or clause of the sentence comprising paragraph Third were to he construed as a trust, the executrix would be required to deprive herself of her bequest of the rights to the rent in order to set up the possible trust again prefaced by or subject to the word “desire” in the beginning of the paragraph.
It is to be noted that paragraph Second of this will provides by its terms for a trust of specific funds in specific banks, thus if any trust is to be found in paragraph Third, it must stand on its own wording without benefit of the trust provisions in paragraph Second. There are no other trust provisions in this will which lacks a residuary clause and the provision at the end of paragraph Third — “ and that the funds therefrom, shall be used by her for equal distribution to each of my surviving grandchildren” (emphasis supplied), is also subject to and prefaced by the precatory word 1 ‘ desire ’ ’.
Where a will contained the words ‘ ‘ shall however, my said son survive me, then I hereby direct and it is my will that my said son may occupy and have the use of the said premises, house and lands # * * so long as he shall so choose ”. The provision was held to create a life estate for the benefit of the son of the testatrix subject to sooner termination if he so elected in writing during his lifetime. (Matter of Halstead, 6 Misc 2d 832, 833, 835.)
It thus appears that if the clause in question constitutes either directly or by implication a valid disposition, that Rose would receive at least a potential life estate in the premises.
In the Halstead case, the testatrix directed the disposition of the remainder property by way of a broad residuary clause, and the court there was able to determine that the presumption against intestacy and the presence of the residuary clause prevented intestacy.
Petitioner’s attorney, by letter to this court, has asked that among other things the court take judicial notice that this property is located in an urban renewal area, so that the life estate, if here declared, would- he the subject of an award of compensation.
The possessor of a life estate is an owner of a freehold estate in real property. (Real Property Law, § 33; McFarland v. *1083 State of New York, 5 Misc 2d 884 [1957]; Watson v. New York Cent. R. R. Co., 47 N. Y. 157, 161-162.)
She is also a necessary party to a condemnation proceeding and is entitled to present her claim for the value of her interest in the land and legal damages. (Ackerman v. State of New York, 199 Misc. 76, 80.)
The other questions raised concerning the effect of this admittedly vague clause are difficult to answer.
The clause does not without a construction by implication dispose of the fee in the real property, since no gift of the remainder interest is made after the gift of the rents. Petitioner asks, who would hold the title if Sharon predeceased her mother, Bose, the executrix, in the absence of other grandchildren I The petitioner points out that the clause itself does not direct a sale of the real property and that the grandchild or grandchildren have no interest in the absence of a sale.
Petitioner has cited a line of cases holding in substance that the gift of the rents to Bose, in the absence of any definite provision as to the term or remainder carries with it the title. (Matter of Sackett, 201 App. Div. 58, 61 [2d Dept. 1922]; Matter of Neuwirth, 170 Misc. 57; Matter of Cuff, 277 App. Div. 829.)
In Matter of Forde (286 N. Y. 125), cited by petitioner, the testatrix by her brief holographic will left all her real and personal estate to her sister “for her maintenance, as long as she lives, the estate to be administered by Alfred Barmor Maclay ” who was appointed executor.
The court there found an absolute gift to the sister and avoided the partial intestacy which would occur under a life use, by finding the testatrix intended by her will to give the property to the sister absolutely. This finding was made partly on the basis of her failure to otherwise dispose of the remainder. The court stated that there was ‘ ‘ no unmistakable indication in the words and expressions used that she intended to cut down the estate from an absolute gift, and to limit the gift to the income of a trust for life.” (Id., p. 127.)
We do not know from the written term whether the bequest to Bose was of the net rents or gross rents, and whether Bose would be required to maintain the property or whether the estate should retain the property; thus the terms of the life tenancy if one be determined are presently indefinite and require further construction.
Further, as petitioner also points out, a sale of the property is not directed, and the written instrument contains no other gift of the remainder unless the sale at the proper time and in the discretion of the executrix and life tenant be made.
*1084 For this reason petitioner suggests that decedent may have intended that her daughter Bose retain rather than sell the property and that testatrix expression of desire as to the use of the proceeds by ‘ ‘ her ’ ’, would be either a moral or legal deterrent to such sale as the case may be,
Petitioner feels that the provision as to sale does not restrict a gift of the title to Bose. He cites three cases in support of this contention.
In one of these cases, Steffan v. Steffan (135 Misc. 568) the will gave an absolute estate to two sons which a later codicil attempted to limit so that it would be kept in their possession, with neither able to force a sale without the consent of the other. That case in which the court held that the restraint on alienation repugnant to the fee simple estate cannot coexist with such an estate, differs from the present case unless we construe the gift of the rents in this particular clause to be a gift of the fee.
Another of these cases involved a holographic will by which testator devised lands to his grandson subject to a condition that the grandson might not sell the land without the consent of the executors, but that if the grandson died without having issue, then the lands were to be sold and the profits divided among all the testator’s heirs. That will contained no residuary clause as to realty and the executors had no power of sale. In that case the court noted that no provision was made for a remainder in the event the grandson was alive when an heir of his body was born, and that upon the birth of the child the grandson stood in the position of having been given the possession, together with the right to the income and profits, with no remainder provided for. The court then stated that by operation of law, there being no other disposition of the lands, title in fee devolved upon the grandson “ under the familiar principle that a gift of the rents and profits of land or a gift of the income arising from personal property, vests such an interest in the devisee or legatee as conforms to the evident intention of the testator ” (citing Durfee v. Pomeroy, 154 N. Y. 583).
There, álso the court swept aside as precatory, words exempting the land from the grandson’s debt, and stating the lands should be kept “ expressly for him to get his living off from them without my executors shall think it best to dispose of them or have [the grandson] dispose of them”. (Kirchhof v. Ramsey, 151 Misc. 142, 146-147, affd. 243 App. Div. 837, affd. 269 N. Y. 640.)
The third case cited by petitioner upon this point deals with a brief will clause reading as follows: “ She shall have the use of all my real estate for ten years, at the end of which time it shall *1085 become her own and at her disposal.” The issue was whether the clause created a fee or a mere tenancy for years, or in other words, did the title vest during the 10-year period in Mary Empson, the beneficiary, under the clause referring to her as ‘ ‘ she ’ Mary Empson died before the expiration of the 10-year period.
There, the court said that if the title did not vest until ten years after the death of the testator, then he died intestate as to his real property, providing his wife did not live 10 years. The court held that the title to the property vested in the widow immediately at the death of the testator. (Empson v. Empson, 123 Misc. 1.)
The Court of Appeals of this State long ago in Brown v. Quintard (177 N. Y. 75) had before it a residuary clause which failed to dispose fully of three fourths of the residue, although a power of sale upon approval was given, and the will spoke of dividing the residue into four shares, specifically noting that one share went to one of four sons, while it also spoke of “ justice to my other children ” (p. 81).
That court, in its decision, said (pp. 84^85): “ There has been no direct and explicit disposition of three-fourths of the residue, and the language of the will is not such as to support a disposition by implication. A few extracts from the reported decisions will serve to illustrate the inflexibility of the rule by which this ease must be governed.
“ ‘ To uphold a legacy by implication, the inference from the will of testator’s intention must be such as to leave no hesitation in the mind of the court and permit of no other reasonable inference.’ (Bradhurst v. Field, 135 N. Y. 564.) ‘ To devise an estate by implication, there must be so strong a probability of such an intention that the contrary cannot be supposed. ’ (Post v. Hover, 33 N. Y. 594.) ‘ Especially is this true when the implication sought to be drawn will result in the disinherison of a heir.’ (Scott v. Guernsey, 48 N. Y. 106). ‘ The rule is peremptory that the heirs shall not be disinherited unless by plain and cogent inference arising from the will.’ (Quinn v. Hardenbrook, 54 N. Y. 83; Lynes v. Townsend, 33 N. Y. 558.)
“ The conclusion that the testator failed to dispose of three-fourths of his residuary estate necessarily leads to the result that he must be held to have died intestate as to the whole of the residue. In the failure of the residuary disposition to the extent of three-fourths, the real substance of the whole residuary scheme failed. * * * Without a valid disposition of the other three-fourths, and without a valid trust, the whole residuary plan is destroyed * * *.
*1086 ‘( Those provisions of the will that are not a part of the residuary scheme are not affected by this decision.”
Gifts of the remainder of trust funds have been implied to avoid intestacy (Matter of Smith, 289 N. Y. 667) but the inference from the will must leave no doubt or hesitation. (Matter of Keehn, 156 Misc. 259, affd. 248 App. Div. 697.)
Courts have from an early day, repeatedly upheld devises by implication, where no gift of the premises seems to have been made in the will in formal language, but to devise an estate by implication there must be such a strong probability of an intention to give one, that the contrary cannot be supposed. (Matter of Klauber, 201 Misc. 839, 843.)
The special guardian for Sharon C. Winnicld, testatrix infant granddaughter, in support of his argument that paragraph Third of the will is not so vague or indefinite as to be unenforcible has cited, among other cases, Matter of Benton (244 App. Div. 56, affd. 269 N. Y. 579). The question in that case was construction of a clause providing a trust of the income of $30,000 for the benefit of a granddaughter (Frances) until she reached the age of 35 years, when principal and any accumulation were to be paid to her. The clause then continued ‘ ‘ should my said granddaughter die before she attain said age of thirty-five years leaving no issue her surviving then and in that event said trust fund and any unpaid income shall be paid in equal shares to my other grandchildren then surviving. ’ ’ The granddaughter died before reaching the age of 35, but left issue, a daughter, to whom she willed her entire estate, subject, however, to an assignment of her interest in the trust.
The Surrogate held (149 Misc. 377) that there was a gift to Lydia, great-granddaughter and daughter of Frances, by implication under the clause above set forth, but the Appellate Division reversed (supra) finding a reasonable inference against the gift to Lydia and held that the trust in the clause above had vested in the granddaughter under the residuary clause in her favor, the remainder not having been disposed of under the quoted paragraph, since the dual condition had not been met due to the granddaughter having died with issue, although before reaching 35.
Matter of Stephan (199 Misc. 118) also cited by the special guardian found gifts by implication of the contents of the house and a workshop where the'will, lacking a residuary clause, made gifts of the house and the workshop only.
In his report, the special guardian admits that gifts or devices by implication are not ordinarily favored. Such a gift by implication must be absolutely necessary to carry out the intention of *1087 the testatrix and the implication must be so strong that a contrary intention cannot be presumed.
This court feels reasonably assured that testatrix did not intend to disinherit her daughter by the precatory clause used referring to her desires in connection with her real property. She had used specific and mandatory wording in other parts of the will. She could likewise have used specific mandatory language here. Furthermore, the clause is susceptible of construction by implication in more than one way. The extent of the rents as whether gross or not, the term of the rents, the bequest of the remainder, the presence or absence of a possible trust would all have to be built by implication from a vague clause, couched in precatory terms.
While the presence of a strong presumption against a partial intestacy must be recognized, there is also an almost equally strong presumption against virtual disinheritance of testatrix’ sole distributee, for whom she had such faith, love and respect that she named her as her executrix.
I feel that, in view of the many benefits provided for the granddaughter, the paucity of benefits otherwise left to the daughter, and the obvious faith, confidence and respect testatrix felt toward her daughter, that testatrix intended that the clause in paragraph Third of the will be precatory in nature; and the will being so vague and indefinite that an actual rewriting would be required to provide an enforcible testamentary disposition, I hold that this clause of said will is invalid and ineffective. There being no residuary clause, both parcels of real property pass by the laws of intestacy.