## 53457. JONES et al. v. FIRST NATIONAL BANK OF ROME.

MARSHALL, Judge.

Appellants Jones and Swanson, who are sisters, bring this appeal from the grant of summary judgment in favor of the appellee, First National Bank of Rome, executor of their mother's will, and Mrs. Brown, guardian ad litem for the unborn heirs of the appellants' mother.

This controversy arose over the ownership of certain certificates of deposit purchased by the testatrix, Mrs. Woods (the appellants' mother). Commencing in April, 1970, and extending through January, 1974, Mrs. Woods created accounts by way of certificates of deposit in which Mrs. Woods deposited her money, naming herself as trustee and her daughter, Mrs. Jones, as beneficiary on some of the certificates and her daughter, Mrs. Swanson, on the remainder. There were other certificates taken in the same way for other named beneficiaries which are not in dispute in this case.

Approximately 14 of these certificates were involved. Each certificate on its obverse side in substance indicates that Mrs. Woods applied for a savings account with the named savings institution as trustee for the stated beneficiary. The application stated in part that it was agreed that any funds placed in or added to the account by the depositor, whether as trustee or as an individual, were conclusively intended to be a gift and delivery at the time of deposit to the trust estate. On the reverse of each application, the account was denominated a discretionary revocable trust agreement. The language on the reverse side referred to the funds in the account. It stated that the conditions of the trust were that the trustee was authorized to hold, manage, pledge, invest and reinvest the funds in the trustee's sole discretion, and to revoke the trust in whole or in part at any time; and that any partial or complete withdrawal by the trustee would be a revocation to the extent of the withdrawal, but no other revocation would be valid unless written notice was given to the institution. During her lifetime, Mrs. Woods effectively depleted the assets of two of the accounts, but left the remaining ones intact. Three of the

accounts were established by Mrs. Woods after she published her last will and testament in September, 1973.

The aforesaid will was duly filed for probate without caveat by the defendant sisters, appellants herein. Following the normal "burial and payment of debt" clause (Clause One), the next ten clauses provided for the disposition of Mrs. Woods' property. Except for two trusts, certain insurance policies, and a monetary bequest to persons other than the appellants, none of which is involved in this lawsuit, all the dispositional clauses of the will dealt with items of personalty other than money. The only specific bequest dealing with money is found in Item 10 of Mrs. Woods' will. That clause provided: "At the present time, I have savings in several Federal savings and loan associations, some in my name and Elizabeth's name [Mrs. Jones] and some in my name and Frances' name [Mrs. Swanson]. These are not a gift to them but are a sum set aside by me from funds of the Manley B. Woods Estate [the appellants' father] for the purpose of paying additional estate taxes on his estate, if any may be found to be payable; and these savings shall be used for that purpose, if needed. If not, they shall be added to the residuum of my Estate and become a part thereof." Item 12 of Mrs. Woods' will provided for the residuum of her estate. In pertinent part, that item appointed the appellee bank as executor and trustee of the residuum of the estate, and provided that the appellants were to receive a life estate in the usufruct of the residuum, with the principal of the trust going to Mrs. Woods' blood heirs upon the death of her last surviving daughter.

It was the bank's position on the motion for summary judgment that tentative or "Totten" trusts were established by the certificates of deposit. The bank contended that these trusts were revoked by Item 10 of Mrs. Woods' will. Thus, the bank maintained that the assets represented by the certificates became merged into the residuum. The appellants assert that the facts disclose that Mrs. Woods intended to make irrevocable trusts, and that upon her death the certificates of deposit vested in the named beneficiaries, the appellants. The parties do not dispute the facts, only the legal implication thereof. The bank moved for summary judgment upon its

complaint for declaratory judgment. The appellants enumerate as error the grant of the bank's motion. *Held:*

The General Assembly has not dealt with the subject of "Totten" trusts. Nor have the courts of this state expressly adopted such a trust. However, in three cases our Supreme Court has, at least by implication, recognized such trusts with approbation. *Carroll v. Littleford,* 225 Ga. 636 (170 SE2d 402) (1969); *Wilder v. Howard,* 188 Ga. 426 (4 SE2d 199) (1939); *Reynolds v. Dorsey,* 188 Ga. 218 (3 SE2d 564) (1939).

The so-called "Totten" trust finds its genesis in the case of In re Totten, 179 N. Y. 112 (71 NE 748). Generally stated, the "Totten" or tentative trust is defined as follows. Where a person deposits money in a savings bank to the credit of himself as trustee of a designated person, this at least prima facie creates a tentative trust for the named beneficiary; and where the depositor dies and leaves such an account open and unexplained, without having made any declaration or decisive act of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at his death. 3 RCL 715-717; 26 RCL 1201, § 39; 65 CJ 293, 294; 46 ALR3d 487; *Reynolds v. Dorsey,* 188 Ga. 218, supra, p. 220. We are satisfied that the trusts with which we are dealing are Totten or tentative trusts. The language in the trust documents, denominating the deposits and any additions thereto gifts, was necessary for the initial creation of a trust and to separate the trust funds from other assets of the depositor. Likewise, the language dealing with the methods of revocation of the trusts is consistent with the creation of a Totten or tentative trust. See Rush v. South Brooklyn Savings Inst., 65 Misc. Rep. 66 (65 NYS 726) (1909), affd. 134 App. Div. 981 (119 NYS 726).

It is a matter of settled law that a tentative trust in a savings bank account can be revoked by a provision of the depositor's valid will which either specifically makes a different disposition of the trust funds or gives rise to the implication that a revocation of the trust was intended to be accomplished. 46 ALR3d 487, 503 § 7(a); *Wilder v. Howard,* 188 Ga. 426, supra. In this case we are faced with the clear and unambiguous language of the will of Mrs.

Woods that states that the various certificates of deposit are not a gift, but intended only to pay additional estate taxes upon the estate of Mrs. Adams' husband (and the appellants' father). It is further clear that, by her will, Mrs. Woods did not intend to forever bar her daughters from the partial benefit of the funds involved, inasmuch as she directed the creation of a trust of these funds with the usufruct going to the appellants and the principal to go to her blood heirs, who, by operation of the laws of nature, would be the children of the appellants.

Where, by will, the depositor disposes of the trust account funds in a manner which, although favorable to the trust beneficiary, abrogates the absolute and immediate right to the funds upon the depositor's death — such as where the will provision bequeaths to A, the trust beneficiary a life estate only in the interest, with the principal of the fund to B upon A's death — such a will provision effectively revokes the alleged tentative trust. In re Shelley's Estate, (50 NYS2d 570) (1944).

While we are satisfied that the will provision was adequate to make known the intent of the testatrix in relation to the tentative trusts, the appellants complain that there were questions of fact created which rendered the granting of summary judgment improper. The appellants sought to have the trial court consider certain oral declarations, made by the testatrix during her lifetime to her daughters and others, that the money in the trusts was theirs. The appellee bank objected to these declarations as being violative of the "dead man's statute." Code § 38-1603 (1). The appellants also point out that the applications for the certificates assert that the money deposited was a gift, and any additions thereto were to become a part of the trust. The trusts could only be revoked by withdrawals or by written notification to the institution. The appellants call attention to the fact that the testatrix did not withdraw from the accounts or deplete the funds prior to her death, and in fact continued to create further deposits. All of this, it is contended, manifested the grantor's intent to create and maintain irrevocable trusts that vested in the beneficiaries at the death of the creator of the trusts. The appellee bank responds by arguing that the testatrix never delivered the

passbooks to the custody of the beneficiaries nor in any other way granted control over the bank accounts. Thus, it is argued that, even if a trust were intended by way of an irrevocable gift, the gift was never effectuated in the absence of delivery during the lifetime of the grantor. See *Knight v. Wingate,* 205 Ga. 133 (52 SE2d 604) (1949). See also In re Beck's Estate, 260 App. Div. 651 (23 NYS2d 525) (1940); In re Brennan's Estate, 59 NYS2d 182 (1946); In re Vetroock's Will, 34 Misc. 2d 1073 (230 NYS2d 485) (1962).

It is true that such arguments and assertions are most helpful and necessary to ascertain the true intent of the grantor-testatrix as to the disposition of tentative trusts where that intent is in doubt. Thus, where the corpus of an estate which seems to include trusts is left to persons other than the beneficiaries with no mention made in a will of the trust, or where all assets are disposed of by way of a residuum clause, or similar ambiguity exists, resort to these signs and evidences of intent is essential. Such resort is not necessary, however, where there is an unambiguous revocation of the trust by will. *Wilder v. Howard,* 188 Ga. 426, supra, p. 430. Such is the case herein. There was no dispute as to the facts in this case, only as to the meaning of those facts. This, traditionally, is a matter for resolution by the trial judge. The purpose of the Summary Judgment Act was to eliminate the necessity for trial by jury where, giving the opposing party the benefit of all reasonable doubts and all favorable inferences that may be drawn from the evidence, there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law. We conclude that this is true in the present case. It follows that the trial judge did not err in granting summary judgment for the appellee bank. *Holland v. Sanfax Corp.,* 106 Ga. App. 1 (126 SE2d 442) (1962); *Summer-Minter & Assoc. v. Giordano,* 231 Ga. 601, 603 (203 SE2d 173) (1973).

*Judgment affirmed. Deen, P. J., and Webb, J., concur.*

Submitted February 15, 1977 — Decided April 5, 1977 — Rehearing denied April 15, 1977 —

*Cook & Palmour, A. Cecil Palmour,* for appellants.
*Rogers, Magruder & Hoyt, Joseph M. Seigler, Jr., Wade C. Hoyt, III, Glen T. York, Jr., Brinson, Askew & Berry, Robert M. Brinson, Smith, Shaw, Maddox, Davidson & Graham, William E. Davidson,* for appellee.